**Opinion issued December 9, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00276-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**SHADRICK HUMPHRIES, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-78026**

---

## MEMORANDUM OPINION

Shadrick Humphries was injured when he slipped on a puddle in a restroom at William P. Hobby Airport. He sued the City of Houston for negligence and premises liability. The City of Houston moved for traditional summary judgment based on governmental immunity. The City argued that it owed Humphries only

the duty owed to a licensee, not an invitee, on private property, and that it did not have knowledge of the premises defect before Humphries's fall. The trial court denied the summary-judgment motion, concluding that the City owed only the duty owed to a licensee, but there was a question of fact about whether the City had actual knowledge of the premises defect.

In a single issue on appeal, the City challenges the trial court's denial of its motion for summary judgment. Because the City conclusively negated the statutory waiver of governmental immunity, and Humphries did not raise a genuine issue of material fact, we reverse the interlocutory order of the trial court, and render judgment dismissing Humphries's claims against the City.

## Background

Humphries slipped and fell in a puddle of water and urine in a public restroom at Hobby Airport. He broke a rib, cracked his rotator cuff, sprained his neck, hurt his back, and sued the City for damages. In his live pleading, Humphries alleged that he was a "business invitee to whom [the City] owed the duty to use ordinary care in making its premises reasonably safe and/or warning . . . of any dangerous conditions." He alleged that the City's agents and employees "committed acts and omissions that constituted negligence" and caused his fall:

1. In failing to maintain the premises in question in a reasonably safe condition and free of hazards to [Humphries] and other invitees entering the premises;

2. In failing to correct the unreasonably dangerous condition which was created by the wet slippery condition of the premises in question;

3. In failing to warn invitees, including the Plaintiff, of the slippery and dangerous condition of the premises in question;

4. In failing to properly inspect the premises in question to discover the unreasonably dangerous condition created by the slippery condition in question;

5. In creating the condition;

6. In failing to properly warn the public of a wet floor.

Humphries alleged that the City had waived governmental immunity under the Texas Tort Claims Act (TTCA) because his claims were based on a condition of real property and the City would be liable to him if it were a private person.[1] Further, Humphries alleged that because he paid for the use of the premises by paying a passenger facility fee (PFC), which was included in the cost of his round-trip ticket, the City owed him the elevated duty of an invitee on private property.[2] He did not allege either that the City was grossly negligent or that it had actual knowledge of the puddle before his fall.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); *id.* § 101.025.

[2] *See id.* 101.022(a).

The City filed a traditional motion for summary judgment, attaching evidence that included excerpts from Humphries's deposition, Humphries's discovery responses (interrogatories and admissions), a "Passenger Facility Charge Audit Guide for Air Carriers," and affidavits from two Houston Airport System employees, James Storemski and Suchakrit Chindakul. Storemski's affidavit pertained to the PFC. Chindakul's affidavit pertained to custodial services, the incident, and his response to it.

Chindakul, a full-time supervisor with Custodial Services at Hobby Airport at the time of the accident, explained that around 10:30 a.m. on the day of Humphries's fall, he received a radio communication asking him to come inspect the restroom. When he arrived, he saw a "yellow tinged liquid covering a third of the bathroom floor." After inspecting the entire restroom, he noted that there was no trash on the floor, the paper towel dispensers were stocked, the paper towel trash cans were less than half full, and the toilet in stall #1 was clogged and had overflowed, causing the puddle on the floor. Because the restroom was otherwise well-maintained, Chindakul concluded that it had recently been cleaned, and that the toilet must have been clogged by a passenger after the custodian left. Chindakul reported "a clogged commode" and requested repairs. Chindakul said he had no prior knowledge of the toilet clog:

> Prior to being requested to [the] restroom [where Humphries fell], I was personally unaware that the toilet in stall 1 was clogged and had

4

caused water and urine to pour onto the restroom floor. Later, I questioned both Nicolas Espinal and Jose Barraza [the custodians] regarding [the] restroom [where Humphries fell] and neither one of them was aware of the clog in the stall #1 toilet.

Humphries responded to the motion for summary judgment, objecting that the affidavit testimony was hearsay and providing instead a photo of the floor from the time of the fall, as well as the deposition transcript and an email from Sam Rea, a former custodial services division manager at Hobby Airport. Rea testified generally about custodial services and maintenance at Hobby Airport.

Humphries also provided the transcript of Chindakul's deposition, in which he said he did not determine the cause of the liquid being on the floor when Humphries fell, but surmised that the puddle could have been from a leak or an overflowing toilet. Chindakul also testified about an automated monitoring system that tracked how many people entered the restroom, how often it was cleaned, and the number of positive or negative reviews of the restroom received by passengers tapping a screen in the restroom, but he said that the system was unreliable and had a high failure rate.

After the City filed its reply, Humphries filed "Plaintiff's Reply on Defendant's Plea to the Jurisdiction." He argued that the City's argument that it lacked actual knowledge was "disingenuous because [its] willful blindness and gross negligence is the only logical explanation for [its] lack of actual knowledge" because there was evidence that the City had received 20 complaints prior to

5

Humphries's fall, and it failed to inspect the restroom in response to the complaints. Noting that a "possessor owes a duty not to injure licensees willfully, wantonly, or by gross negligence," Humphries argued that despite his status, the City's motion should fail.

The trial court partially granted the City's motion, ruling that Humphries was a licensee as a matter of law, but denying summary judgment because "[t]here remains a question of fact as to whether Defendant actually knew of the alleged hazardous condition prior to the time of the accident." The City appealed.

**Analysis**

The City raises a single issue challenging the trial court's denial of its motion for summary judgment.

**I.      The applicable legal standards are well-settled.**

**A.      Traditional Motion for Summary Judgment**

A governmental unit may assert immunity in a motion for summary judgment and challenge a trial court's subject matter jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *City of Houston v. Johnson*, No. 01-23-00356-CV, 2025 WL 1521763, at *6 (Tex. App.—Houston [1st Dist.] May 29, 2025, no pet.) (mem. op.). We review a trial court's summary-judgment ruling de novo. *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017).

A movant seeking a traditional summary judgment must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When a governmental defendant asserts immunity through a traditional summary judgment motion, it must initially present proof that conclusively negates the trial court's subject-matter jurisdiction. *See City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024). The plaintiff must respond with enough evidence to raise a genuine issue of material fact to survive the jurisdictional attack. *See id.* When reviewing a summary judgment ruling, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

### B. Governmental Immunity and the Texas Tort Claims Act

"Governmental units are immune from suit unless immunity is waived by state law." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Governmental immunity, like sovereign immunity from which it is derived, exists to protect political subdivisions, such as municipalities, from suit and liability for monetary damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("*Mission Consol. I*"). Governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits against the State's political subdivisions unless immunity is waived by the Legislature. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) ("*Mission Consol.*

7

*II*"); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous." *See Mission Consol. I*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE § 311.034). The Legislature has expressly waived immunity to the extent provided by the Texas Tort Claims Act. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109 (TTCA). As relevant to this appeal, the TTCA generally waives governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2); *see State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006) ("The Texas Tort Claims Act includes, among other things, a limited waiver of the state's immunity from suits alleging personal injury or death caused by premises defects.").

That said, a claim for a premises defect must meet the heightened standards of section 101.022 of the TTCA, rather than simply negligent use or condition of property. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016). Under section 101.022, when a claim arises from a premises defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE § 101.022(a); *see Shumake*, 199 S.W.3d

at 283. "If the plaintiff pays for the use of the premises, the governmental unit owes the plaintiff the duty owed to an invitee." *Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (quoting *City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex. App.—Dallas 2009, no pet.)).

### C. Premises Liability

"The threshold question in a premises liability case is whether the defendant owes a duty to the injured plaintiff." *Watanabe v. Summit Path Partners, LLC*, 650 S.W.3d 112, 125 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, no pet.) (citing *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020)). The existence of a duty is a question of law for the court to decide based on the facts of the case. *Hillis*, 602 S.W.3d at 440. For a duty to exist, the defendant must have possession or control over the premises where the injury occurred. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). The nature of the duty owed here depends on the plaintiff's status as an invitee or licensee. *See Hillis*, 602 S.W.3d at 440; *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Watanabe*, 650 S.W.3d at 125.

Here, the trial court found that Humphries was a licensee, and Humphries has not challenged this finding on appeal.[3] "The duty owed to a licensee [on

---

[3] Humphries's live pleading alleges that he was an invitee because he paid for the use of the airport by paying a PFC that was included in the cost of his ticket. We agree that Humphries was a licensee because payment of the PFC was not

9

private property] requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Sampson*, 500 S.W.3d at 391 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). Absent willful, wanton, or grossly negligent conduct, to prevail in a premises-liability case, the licensee plaintiff must show that: (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee. *Payne*, 838 S.W.2d at 237.

---

payment for the use of the premises. *See Tex. Dep't of Pub. Safety v. Gaible*, No. 01-22-00405-CV, 2023 WL 2799069, at *2–5 (Tex. App.—Houston [1st Dist.] Apr. 6, 2023, no pet.) (mem. op.) (collecting cases and contrasting situations in which payment was for use of premises or merely related to premises); *see City of Dallas v. Davenport*, 418 S.W.3d 844, 847–48 (Tex. App.—Dallas 2013, no pet.) (holding that payment of Passenger Facility Fee as part of price of airline ticket did not constitute payment for use of premises and merely related to premises); *see also City of Houston v. Crawford*, No. 01-18-00179-CV, 2018 WL 4868306, at *3 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (mem. op.) (same).

## II. The trial court erred by denying summary judgment.

### A. The City conclusively proved that it lacked actual knowledge of the danger or condition at issue.

To resolve the question of whether the City has retained its immunity, we must determine whether it would, if it were a private person, be liable to Humphries under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2). In this case, it is undisputed that the City had control over the premises where Humphries was allegedly injured, and therefore it owed him a duty. *See Brown*, 80 S.W.3d at 554. The trial court found that the City owed Humphries the duty owed to a licensee, and Humphries has not challenged that finding on appeal. Thus, to demonstrate a statutory waiver of immunity, he must show, in addition to other elements, that the City actually knew of the condition of the premises that created an unreasonable risk of harm to him. *See Payne*, 838 S.W.2d at 237.

In a premises-liability case, to determine whether the City had actual knowledge, we must correctly identify the danger or condition at issue. *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 318 (Tex. 2024) (cleaned up). The Texas Supreme Court has repeatedly held that it is the condition itself, "not the antecedent situation that produced it" that constitutes the "relevant danger or condition about which the defendant's knowledge is relevant." *Id.*; *accord Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006). Here, the relevant danger was the wet floor in the men's restroom, not the clogged and

11

overflowing or leaking toilet that caused the floor to be wet. *See Mohammadi*, 689 S.W.3d at 318; *Brookshire Grocery*, 222 S.W.3d at 407.

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008). "Hypothetical knowledge will not suffice." *Sampson*, 500 S.W.3d at 392. Evidence that the owner could have done more to warn the licensee is also not sufficient to demonstrate actual knowledge. *Id.*

Actual knowledge may be proven by circumstantial evidence when it establishes actual knowledge directly or by reasonable inference. *Stewart*, 249 S.W.3d 412 at 415. "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).

The City's traditional motion for summary judgment alleged that the City's proof conclusively negated the element of actual knowledge. In its motion, the City first asserted: "Houston did not have actual knowledge of the overflowing toilet before Mr. Humphries fell in men's restroom #35 at Hobby Airport." Clerk's R.

12

112. Later in its summary-judgment motion, the City argued: "The evidence is uncontroverted that Houston did not have actual notice of an alleged water/slippery condition on the floor prior to Humphries'[s] fall." Clerk's R. 122–23. The "evidence" to which the City referred was Chindakul's affidavit attesting to the fact that neither he nor the custodians were aware of the clog in the toilet that had caused the leak on the floor.

Chindakul attested that because custodial services employee assignments are gender-based, the restrooms remain open during cleanings, except when "there was a clog in one or more toilets with water or other substances on the floor," when the restroom would be closed. The evidence is undisputed that the restroom was open when Humphries entered it and fell. The City's evidence that, at the time of Humphries's fall, the restroom was open, Chindakul was not aware of the liquid on the floor, and Chindakul and the custodians were not aware of the clogged toilet conclusively negates the City's actual knowledge of the liquid on the floor of the restroom. Thus, the City of Houston met its traditional summary-judgment burden to conclusively negate an element that Humphries must prove to demonstrate a waiver of immunity *See, e.g.*, *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014); Tex. R. Civ. P. 166a(c).

**B.** **Humphries did not raise a fact question that would defeat summary judgment.**

To defeat summary judgment, Humphries needed to present evidence raising a genuine issue of material fact about whether the City had actual knowledge to satisfy the statutory waiver of immunity. *Powell*, 704 S.W.3d at 448. Humphries's evidence centered on the processes and procedures related to custodial services, including the automated monitoring system used to track how many people entered the restroom, how often it was cleaned, and the number of positive or negative reviews of the restroom.

Humphries provided as summary-judgment evidence the deposition of Sam Rea, a former custodial services division manager at Hobby Airport. Rea testified about the smart restroom feedback system, which allowed passengers to rate the restroom by tapping a happy face or a sad face on a screen that was like an iPad. After tapping the sad face, the passenger had an option to identify one of eight deficiencies like lack of paper towels or a dirty mirror. Rea testified that the floors of the restrooms are specifically designed to make spills or puddles easily visible. The system also recorded who cleaned the restroom and when. Humphries did not present any evidence that the feedback system indicated that there was a wet floor. Therefore, the sad faces did not report the potential danger presented by the condition that caused Humphries's fall. *See Aguilar*, 251 S.W.3d at 513. It was at most circumstantial evidence, insufficient to create an inference of the City's

14

actual knowledge of the dangerous condition. *See Stewart*, 249 S.W.3d at 415. Evidence that merely shows that the City could have done more to monitor the restroom is insufficient to show the City's actual knowledge. *See Sampson*, 500 S.W.3d at 392.

Because Humphries's evidence did not show that the City had actual knowledge of the liquid on the restroom floor, we conclude that his evidence did not raise a genuine question of material fact. We hold that the trial court erred by denying the City's motion for summary judgment. We do not need to consider the remainder of the parties' arguments on appeal. *See* TEX. R. CIV. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## Conclusion

We reverse the trial court's order, and we render judgment dismissing Humphries's claims against the City.

Susanna Dokupil
Justice

Panel consists of Chief Justice Adams, and Justices Morgan and Dokupil.